## In re Appeal of Heritage Building Group

C.P. of Bucks County, no. 98-4827-18-5.

*John A. VanLuvanee,* for Heritage Building Group.
*George M. Bush* and *Craig A. Smith,* for Buckingham Township.

*Robert J. Sugarman,* for intervenors.

RUFE, J., *J.,* May 2, 2000—On May 24, 1995, appellant Heritage Building Group filed an application seeking a curative amendment to the zoning ordinance of Buckingham Township, Bucks County. After three hearings were held, Heritage filed an amended appeal, and an additional 27 public hearings were held, at which evidence was taken. A total of 2,966 pages of testimony was recorded, beginning July 31, 1995 and concluding March 30, 1998. Proposed findings of fact and conclusions of law were submitted by the township and by the applicant on April 27, 1998; and an opinion, comprehensive in the exploration of the evidence and the issues, and exhaustive to a length of 80 pages, was filed on June 15, 1998, following a unanimous vote by the board at a public meeting held that day denying Heritage's request to amend the zoning ordinance to provide for an increased number of apartments.

Heritage filed its land use appeal to this court on July 14, 1998. Petitions to intervene were filed by, or on behalf of, various residents of the township, and on behalf of a township civic association. After a conference pursuant to Rule 27 of the local Bucks County Rules of Civil Procedure, we entered an order denying leave of intervenors to intervene, entered January 22, 1999, based on our belief that the interests of intervenors were adequately represented by the solicitor for the township. An appeal was perfected to the Pennsylvania Commonwealth Court, and we issued our opinion in support of our order of January 23, 1999 on March 17, 1999. The appeal to the Commonwealth Court was quashed as a result of a March 30, 1999 stipulation by all counsel agreeing that intervenors be entitled to intervene, conditioned upon their pro-

ceeding with one representative. An order approving the stipulation was executed by this court on May 6, 1999, whereupon the Commonwealth Court remanded the case to this court, and relinquished jurisdiction on May 12, 1999.

Heritage next filed an application for a hearing to supplement the record to allow the introduction of evidence "with respect to the 'affordability' of the multi-family housing and apartment-type dwelling units which could theoretically be developed under the provisions of the zoning ordinance." We held oral argument on July 9, 1999. Thereafter, on August 12, 1999, we issued a memorandum opinion denying the motion of Heritage to hold hearings and supplement the existing record to receive evidence on the issue of affordability. In that opinion, we relied principally upon *BAC Inc. v. Board of Supervisors of Millcreek Township,* 534 Pa. 381, 633 A.2d 144 (1993), which disallowed "zoning schemes restricting or excluding certain uses of property, not classes of people." (p. 174.)

Another motion for conference was filed by attorneys for Heritage to fix a schedule for the filing of briefs. That schedule was complied with as of February 28, 2000; briefs have been received, and we now address the ultimate issues.

Almost five years have passed since the initial filing of the curative amendment by Heritage in which they originally alleged 13 reasons why the Buckingham Township Zoning Ordinance was invalid. Following two and one-half years of testimony, the challenges to the zoning ordinance invalidity were boiled down to three, succinctly stated in the zoning hearing board opinion as follows:

"(1) the ordinance is unconstitutional because it does not provide for the township's 'fair share' of lands zoned

for and available for development of multi-family dwellings;

"(2) the ordinance has the effect of excluding from the township a substantial number of families who might otherwise be anticipated to reside in the municipality who cannot afford to rent or purchase the housing which can be developed under the existing zoning ordinance criteria;

"(3) the provisions of the ordinance which regulate the development of apartment-type multi-family dwellings impose unreasonable restrictions on the development of apartments and render it economically not feasible to develop apartments."

The standards by which we are guided are easily recited. The zoning ordinance is presumed to be valid and constitutional, and the burden is on the challenger to prove otherwise. *BAC Inc. v. Board of Supervisors of Millcreek Township, supra.* Zoning is a valid exercise of the police power of local government, exercised for the purpose of promoting public health, safety or welfare. A challenger has a heavy burden of proving the ordinance invalid. "The party challenging the constitutionality of certain zoning provisions must establish that they are arbitrary, unreasonable and unrelated to the public health, safety, morals and general welfare." *Boundary Drive Associates v. Shrewsbury Township Board of Supervisors,* 507 Pa. 481, 489, 491 A.2d 86, 90 (1985).

Criteria for reviewing curative amendments were recited by Justice Nix in *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 192-94, 382 A.2d 105, 110-11 (1977):

"The initial inquiry must focus upon whether the community in question is a logical area for development and population growth. . . .

"Having determined that a particular community is in the path of urban-suburban growth, the present level of development within the particular community must be examined. Population density data and the percentage of total undeveloped land and the percentage available for the development of multi-family dwellings are factors highly relevant to this inquiry. . . .

"Assuming that a community is situated in the path of population expansion and is not already highly developed, this court has, in the past, determined whether the challenged zoning scheme effected an exclusionary result or, alternatively, whether there was evidence of a "primary purpose" or exclusionary intent to zone out the natural growth of population. . . .

"Our primary concern now is centered upon an ordinance's exclusionary impact. . . .

"In analyzing the effect of a zoning ordinance, the extent of the exclusion, if any, must be considered. Is there total exclusion of multi-family dwellings, which we disapproved in *Girsh Appeal*, [437 Pa. 237, 263 A.2d 395 (1970)], or is the exclusion partial? If the zoning exclusion is partial, obviously the question of the ordinance's validity is more difficult to answer. In resolving this issue, once again the percentage of community land available under the zoning ordinance for multi-family dwellings becomes relevant. This percentage must be considered in light of current population growth pressure, within the community as well as the region, and in light of the total amount of undeveloped land in the community. Where the amount of land zoned as being available for multi-family dwellings is disproportionately small in relation to these latter factors, the ordinance will be held to be exclusionary." (citations omitted) (footnote omitted) (emphasis in original)

On appeal to the court of common pleas, our standard of review is to determine whether the zoning hearing board committed an abuse of discretion or an error of law. *Baker v. Chartiers Township Zoning Hearing Board,* 677 A.2d, 1274 (Pa. Commw. 1996). A governing body abuses its discretion when its findings of fact are not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

It will be readily seen that the Zoning Hearing Board of Buckingham Township assiduously followed the analytical path outlined for it by Justice Nix in *Surrick.* The board made findings of facts which accepted in part those contended for by applicant, and accepted in part those contended for by the township. Certain findings represented a sophisticated distillation of evidence submitted by both sides, resulting in a balanced evaluation of the facts addressed at the hearings. Notably, findings of fact nos. 63, 65 and 66, relating to the amount and percentage of land available for development constitute logical evaluation of conflicting evidence to arrive at a basis for a reasoned analysis of the opposing interpretations of the contending parties. Likewise findings of fact nos. 71, 72 and 73 mark the manner in which the zoning hearing board independently measured the acreage available for development. Additionally, the zoning hearing board supported with voluminous evidence, its conclusion that much of the current agricultural use of land in the township constitutes "developed," rather than "undeveloped" land, in keeping with the stated purpose of the township's comprehensive plan. See findings of fact nos. 28 to 49.

The zoning hearing board opinion, after making the afore-mentioned findings of facts, then made the following observation:

"It is clear to this board that since *Surrick* the Commonwealth has expressed a strong governmental interest in the preservation of farm land. In the 1988 amendments to the Municipalities Planning Code the Pennsylvania Legislature codified that farm land preservation is an appropriate objective of zoning legislation. Sections 603 and 604 of the MPC [53 P.S. §10603(b)(5), §10604(1) and (3)] mandate that ordinances, be designed to preserve a 'present use' of agricultural land. . . ." (p. 59.)

"The Pennsylvania Supreme Court has also recognized the governmental interests in the preservation of farm land." (Citing *Boundary Drive Associates, supra,* pp. 90-91.) (p. 60.)

So, too, the zoning hearing board carefully analyzed the applicant's contention that Buckingham's zoning ordinance effects a "de facto" exclusion of Buckingham's fair share of "a reasonable range of multi-family dwelling in various arrangements." It rationally concluded that (1) the amount of "undeveloped" land in Buckingham was less than alleged by âpplicant; (2) that applicant erroneously excluded lands in AG-2, UC-3 and R-7 districts which are available for multi-family development; and (3) given the higher population density available for multi-family dwellings on the land available, a much greater percentage of available population growth is available as multi-family development than as alleged by applicant. As we review the evidence and the zoning hearing board opinion, we are unable to say the board's decision is not based upon substantial evidence. Although the zoning hearing board, the fact-finder, has the power

to reject even uncontradicted testimony if the board finds the testimony to be lacking in credibility, cf. *Heritage Building Group Inc. v. Bedminster Township Board of Supervisors,* 742 A.2d 708, 710 (Pa. Commw. 1999), we conclude instead that each of the findings of fact relied upon by the zoning hearing board in formulating its conclusions of law was based upon substantial evidence contained in the lengthy record.

Thus, we deny the appeal on the basis of the opinion of the zoning hearing board and enter the attached order.

## ORDER

And now, May 2, 2000, the land use appeal of applicant, Heritage Building Group Inc., from the decision on June 15,1998 of the Buckingham Township Zoning Hearing Board is denied and dismissed. Said decision of the zoning hearing board is affirmed.