David Demko, Seth Hallam, and : 
Nicholas Furar :
:
v. :
:
City of Pittsburgh Zoning Board :
of Adjustment, City of Pittsburgh, :
and Chekantz Clan, LLC :
: No. 143 C.D. 2025
Appeal of: Chekantz Clan, LLC : Argued: March 3, 2026


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                    HONORABLE ANNE E. COVEY, Judge
                    HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                                   FILED:  May 4, 2026


Chekantz Clan, LLC (Appellant) appeals from the Allegheny County Common Pleas Court's (trial court) December 30, 2024 order reversing the City of Pittsburgh (City) Zoning Board of Adjustment's (ZBA) approval for a variance. Appellant presents two issues for this Court's review: (1) whether the ZBA reasonably concluded that the continued use of the undeveloped gravel parcel at 1131 Loraine Street in the City (Property) for a limited number of parking spaces reflected the minimum variance that will afford relief; and (2) whether the ZBA properly rejected David Demko's, Seth Hallam's, and Nicholas Furar's (Furar) (collectively, Objectors) argument that the Property owner should be required to subdivide and sell the Property, as an alternative to seeking a variance.  After review, this Court reverses.

Appellant is an entity comprised of the family members who jointly inherited the Property.  On December 18, 2023, Appellant filed a zoning application

seeking the use of a nine-stall parking lot, and a variance from Section 911.02 of the Pittsburgh Zoning Code (Code),[1] wherein "COMMERCIAL PARKING (LIMITED)" is prohibited in the R1A-H District.[2] Reproduced Record (R.R.) at 4a. The ZBA held a hearing on February 1, 2024, at which Tracey McCants Lewis (Lewis)[3] testified on Appellant's behalf. Objectors, Dave Seidin, and Lily Rosenblum (Rosenblum) testified against the variance. On April 1, 2024, the ZBA approved the variance subject to the following conditions: the parking lot shall comply with the Code's site development for parking area; landscaping shall be provided as described to the ZBA; and the Property's use for parking shall be limited to long-term leases, and temporary or one-day use of the spaces is prohibited.

Objectors appealed to the trial court. On December 30, 2024, the trial court reversed the ZBA's decision concluding:

> [T]he record evidence falls short of establishing at least three of the necessary criteria[:] (1) an unnecessary hardship exists that is due to unique physical conditions of the [P]roperty and not the circumstances or conditions generally created by the provisions of the [Code]; (2) that because of unique physical circumstances or conditions, there is no possibility that the [P]roperty can be developed in strict conformity with the provisions of the [Code]; and (5) that the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue. The [ZBA's] finding that [Appellant] met the necessary criteria is not supported by the record. [Appellant] in this case did not meet its heavy burden of establishing what is necessary for a use variance, an extraordinary exception that should only be granted sparingly.

---

[1] Pittsburgh Code § 911.02 (use table). *See* https://pittsburgh-pa.elaws.us/code/coor_pizoco_titlenine (last visited May 1, 2026).

[2] The R1A-H District is a residential only district.

[3] Lewis is one of the family members who jointly inherited the Property.

2

Original Record (O.R.) at 415-16.[4]  Appellant appealed to this Court.[5]

Appellant first asserts that the ZBA's variance standards required the ZBA to consider whether the Property's irregularity, narrowness, or shallowness created an unnecessary hardship that prevents its viable use for a permitted purpose. Appellant contends that the ZBA reasonably concluded that it would be impossible to use the Property for permitted uses and that its continued use for parking spaces, subject to several conditions for improvement, represented the minimum relief, with minimal impact on the surrounding area.

Objectors rejoin that Appellant failed to meet its heavy burden of establishing what is necessary for a use variance. Specifically, Objectors retort that Appellant failed to establish that an unnecessary hardship exists that is due to the unique physical conditions of the Property and not the circumstances or conditions generally created by the Code's provisions. Objectors further counter that Appellant failed to establish that because of unique physical circumstances or conditions, there is no possibility that the Property can be developed in strict conformity with the Code's provisions. Objectors also assert that Appellant failed to establish that the variance will not alter the essential character of the neighborhood or district in which the Property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

---

[4] Because the Original Record's pages are not numbered, this Court references electronic pagination herein.

[5]

> Where, as here, the trial court does not take additional evidence, this Court's review is limited to determining whether the [ZBA] committed an error of law or an abuse of discretion. *See Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, . . . 462 A.2d 637, 639 ([Pa.] 1983). A zoning board abuses its discretion "only if its findings are not supported by substantial evidence." *Id*. at 640. Substantial evidence is such evidence a reasonable mind might accept as adequate to support a conclusion. *Id*.

*In re: 3401 Sky Props., LLC*, 318 A.3d 152, 157 n.12 (Pa. Cmwlth. 2024) (quoting *Azoulay v. Phila. Zoning Bd. of Adjustment*, 194 A.3d 241, 246 n.4 (Pa. Cmwlth. 2018)).

3

Finally, Objectors submit that Appellant failed to establish that the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least Code modification possible.

Initially, Section 922.09.E of the Code mandates:

General Conditions for Approval.

No variance in the strict application of any provisions of this [] Code shall be granted by the [ZBA] unless it finds that all of the following conditions exist:

1. That **there are unique physical circumstances or conditions**, **including irregularity**, **narrowness**, or shallowness **of lot size or shape**, **or exceptional topographical or other physical conditions peculiar to the particular property**, and that **the unnecessary hardship is due to the conditions**, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

2. That because of such physical circumstances or conditions, **there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance** and that **the authorization of a variance is therefore necessary to enable the *reasonable use* of the property**;

3. That such unnecessary hardship has not been created by the appellant;

4. That **the variance**, if authorized, **will not alter the essential character of the neighborhood or district** in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

5. That **the variance**, if authorized, will **represent the minimum variance that will afford relief** and will represent the least modification possible of the regulation in issue.

4

In granting any variance, the [ZBA] may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of th[e Code] and the zoning ordinance[.]

The applicant shall have the burden of demonstrating that the proposal satisfies the applicable review criteria.

Pittsburgh Code § 922.09.E (emphasis added). Section 907.03 of the Code provides, in relevant part:

907.03.A     Intent

The intent of the [North Side Commercial Parking Area Overlay (] NSCPO[)] District is to prohibit the installation of commercial parking areas as defined under [Section] 911.02 [of the Code] on vacant lots.

907.03.B     Application

When an Occupancy Permit Application is filed for zoning approval of a commercial parking area on property located within a NSCPO District, the Zoning Administrator shall disapprove the application.

Pittsburgh Code § 922.03.

This Court has recently explained:

Whether an applicant is seeking a use or a dimensional variance, the applicant must, at a minimum, demonstrate that an unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest. In the context of a use variance, an applicant must establish that an unnecessary hardship attends the land with evidence that: (a) the physical conditions of the property are such that it cannot be used for a permitted purpose; or (b) the property can be conformed for a permitted use only at a prohibitive expense; or (c) the property is valueless for any purpose permitted by the zoning ordinance. While an unnecessary hardship can be established by demonstrating that the hardship falls squarely within one of these three categories, in practice the evidence presented often does not fit neatly in one category or another but overlaps. **When evaluating an unnecessary hardship**, **use of adjacent and surrounding land is relevant**. Once an applicant has demonstrated that the property is subject to

5

an unnecessary hardship, the party must also demonstrate that the conditions are unique to the property; where the hardship is present in the district as a whole or in a portion of the district, the proper remedy is re-zoning rather than a variance.

**The vast majority of instances where an unnecessary hardship attends the land arise from the physical characteristics of the property**. . . . Less common than an unnecessary hardship due to the physical characteristics of the land . . . is an unnecessary hardship due to the prohibitive expense of conforming a property to a permitted purpose under the ordinance.

*Palmer v. Susquehanna Twp. Zoning Hearing Bd.*, 331 A.3d 129, 133-34 (Pa. Cmwlth. 2025) (emphasis added) (quoting *Nowicki v. Zoning Hearing Bd. of the Borough of Monaca*, 91 A.3d 287, 292 (Pa. Cmwlth. 2014) (citations omitted)).

Here, relative to the hardship requirement, Lewis testified:

Q[.] Okay. And are there any hardships with developing this [P]roperty in conformance with the uses that would be permitted by the [C]ode?

A[.] Yes. I think, you know, **the shape and the size of [the] lot, it's very unique**. As you can see in the previous pictures, **it's very narrow**. **It runs perpendicular to a number of other lots on the block**, **and it runs for the entire length of the block**. It's really kind of *impractical to use it to build on*.

It's been the same shape and size since the 19 -- early 1900s. **It's a steep slope that goes down the hill**. And again, it's – **it's squeezed in between an [education/medical/institutional District (] EMI[)] and a neighborhood commercial district**, so we really have *limited ability to build a residence* or anything like that on that lot.

R.R. at 44a-45a (bold and italic emphasis added). Further, in response to an objector's testimony that Appellant can build a residence on the lot notwithstanding the slope because others have, Lewis confirmed: "[T]his particular parcel runs perpendicular to those houses[,]" "[a]nd so the considerations of building on a slope

6

are very different and unique to this particular parcel because it runs perpendicular to the other parcels on the block[.]" R.R. at 87a. The testimony reveals that although houses could be built on those lots, they cannot be built on her lot. There was no evidence rebutting such testimony.

Relative to whether the proposed use will alter the essential character of the neighborhood or district, Lewis related:

> Q[.] Okay. And have you considered how the variance, if granted, might affect the surrounding area?
>
> A[.] We don't believe that there would be any type of impact. Again, **the lot's been used for parking for over 30 years**.
>
> And[,] as you can see, **directly across**, **adjacent to the [P]roperty in question**, **there is another parking lot. There's also several other similarly shaped parking lots within blocks of this parking lot**.
>
> We also think that this will be very useful to the community to relieve some congestion for on-street parking for residents. Not everyone that lives on Boyle or Parkhurst [Streets] has access to private parking or [a] garage.
>
> . . . .
>
> Q[.] **And here**, I believe you can see up in the upper left-hand corner and in the lower right[-]hand corner **there are some other similarly shaped lots which are being used for parking**; **is that correct**?
>
> A[.] **That is correct**.
>
> Q[.] And that's **in addition to the lot that's directly across the street**?
>
> A[.] **That's correct**.

R.R. at 46a-47a (emphasis added).

The ZBA determined:

> 7. [Lewis] presented substantial and credible evidence that the [] Property has been used for parking since at least the 1980s and has not been used for a structure since approximately 1939.

7

8. [Lewis] presented substantial and credible testimony to demonstrate that building a structure on the [] Property is not economically viable. Specifically, [Lewis] presented testimony that the [] Property is long and narrow and extends along Loraine Street, behind the several Boyle Street parcels. (See Ex. 1-3.) Building a structure on the [] Property is impractical and would block the view and light access of the Boyle Street houses. (*Id*.) [Lewis] also explained that the topography of the site makes construction on the site impractical. Because the slope extends up Loraine Street, from Parkhurst Street to Press Way, any construction would require digging into that slope on the site. This makes challenges unique to the [] Property as compared to the Boyle Street parcels and other properties on Loraine Street.

9. [Lewis] credibly testified that the project, as proposed, represents the minimum relief that could be afforded to use the site, with the least disruption to the area.

10. [Lewis] provided credible testimony that she intends to comply with the Code's requirements for on-site parking, including landscaping and curb cut requirements, and that the impact of the proposed use would be comparable to or less than the impact of the current use of the [] Property as an unmonitored parking area with a gravel surface.

11. To address [O]bjector[s'] testimony relating to the application of Section 907.03 [of the Code] to the current project proposal, [Lewis] provided credible testimony that use of the [] Property for parking was not "new" in 2000 when the [NSCPO] was adopted and that it has been actively used as a parking area since at least 1980. The parking area is also not vacant, because it includes various features, including parking space dividers and chains to block access to the stalls, in connection with that use.

12. For these reasons, consistent with the evidence and testimony presented and the applicable legal standards governing variances, the [ZBA] concludes that approval of the request is appropriate.

O.R. at 15-16.

The Pennsylvania Supreme Court (Supreme Court) has instructed:

8

> [A] reviewing court may not disturb the findings of the zoning board if the record indicates the findings are supported by substantial evidence. *Boundary Drive Assocs. v. Shrewsbury Twp. B[d.] of Supervisors*, . . . 491 A.2d 86, 90 ([Pa.] 1985). Substantial evidence, in turn, means relevant evidence which a reasonable mind might accept as adequate to support a conclusion. Furthermore, [the Supreme Court] ha[s] cautioned that reviewing courts are not super boards of adjustment or planning commissions of last resort. Indeed, a court errs when it substitutes its judgment on the merits for that of a zoning board whose findings are supported by substantial evidence.

*Metal Green Inc. v. City of Phila.*, 266 A.3d 495, 513-14 (Pa. 2021) (citations omitted).

Here, while Appellant only presented lay testimony, i.e., Lewis' testimony, as opposed to expert testimony, it also presented exhibits to support the testimony, i.e., historic photos and maps. It is uncontested that the Property's width on Parkhurst Street is approximately 20 feet, and the Property's length extends along Loraine Street, from Parkhurst Street to Press Way, parallel to and abutting the rear of six parcels on Boyle Street. Further, it is uncontested that the Property has been used for parking at least since 1980, and that surrounding like lots are also being used for parking. Moreover, Lewis testified that the Property consists of a steep slope that goes down the hill, and it is squeezed in between an EMI District and a neighborhood commercial district, so there is limited ability to build a residence on that lot. Based on the above, this Court is constrained to hold that substantial evidence supports the ZBA's conclusions that the Property's unique conditions result in an unnecessary hardship.[6]

---

[6] The Dissent contends that because the ZBA did not use the words *cost prohibitive*, the language present in the second criterion, and instead used the word *impractical*, the language Lewis used, to satisfy the Code's second criterion, the ZBA erred. The Supreme Court, in *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 721 A.2d 43, 49 (Pa. 1998), declared: "[T]he standard utilized by the Commonwealth Court in the matter *sub judice*, which

Relative to whether there is any possibility that the Property can be developed in strict conformity with the Code's provisions, and whether the variance represents the minimum variance that will afford relief, Furar argued before the ZBA that Appellant could subdivide the Property into parcels corresponding to the side lot lines of the several abutting houses on Boyle Street and sell those subdivided parcels to him and the other Boyle Street homeowners "for whatever purpose [they] would like to do with [their] homes that can -- that can -- coincides with the uses allowed in the existing residential district."  R.R. at 73a; *see also* R.R. at 16a ("[Appellant] could subdivide the [Property] into parcels corresponding to the side lot lines of the several abutting houses on Boyle Street and sell those subdivided parcels to myself and the other Boyle Street homeowners for whatever purpose associated with our homes, more generous rear yards, a garage, etc.").  Furar further testified that Appellant never approached him, nor to his knowledge, any other of the Boyle Street homeowners to see if that was an option, even if it was a less lucrative one than a commercial parking lot.  *See* R.R. at 73a.  In addition, Rosenblum related her concerns that if the variance is granted, she would no longer have access to the Property: "I wouldn't necessarily even be guaranteed to be sold

---

would deny a variance to any applicant who failed to demonstrate that the property could not be used for any permitted purpose, is in direct contradiction to this Court's holding in *Halberstadt* [*v. Borough of Nazareth*, 687 A.2d 371 (Pa. 1997)]."  Importantly, this Court affirmed a zoning hearing board's conclusion that the applicant proved hardship, reasoning: "[T]he [zoning hearing b]oard determined residential use of the [s]ubject [p]roperty is **impractical**.  Specifically, the [zoning hearing b]oard determined the [s]ubject [p]roperty could not be developed based on applicable zoning restrictions and the property's unique physical characteristics."  *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 812 (Pa. Cmwlth. 2005) (emphasis added).

Here, although Lewis and the ZBA used the word "impractical," rather than "cost prohibitive," because the ZBA found Lewis credible and found that the Property had unique physical circumstances or conditions preventing Applicant from building a residence thereon for various reasons, it is clear that the ZBA concluded "that the authorization of a variance is therefore necessary to enable the *reasonable* use of the [P]roperty," Pittsburgh Code § 922.09.E(2) (emphasis added), thus, satisfying the second condition for the variance.

10

[a parking spot] from the application, and this concerns me for there is not a lot of residential parking to begin with." R.R. at 81a-82a; *see also* R.R. at 15a ("I was informed that the lot in question, part of it contained land as part of the property that I was moving into and okay for parking (given that many hospital employees from [Allegheny General Hospital] parked there every day).").

Clearly, there is no requirement that a property owner subdivide its property for the abutting landowners' benefit, rather than obtain a use variance. The fact that Objectors and Rosenblum may lose their rights to use the Property as they had been doing for many years is not a valid consideration for the ZBA. It certainly does not prove that the proposed use as a parking lot is not the minimum variance needed to provide the required relief. In the instant case, because it would be impractical to build a residential structure on the Property due to its irregular width and length, and steep slope running down the hill, using the Property consistent with its current use since at least 1980, would support the ZBA's conclusion that it is the minimum variance that would afford relief, as there would be no change of use. Moreover, because it is not a change in use and surrounding like lots are also used for parking, such use would not alter the essential character of the neighborhood or district. Because "the record indicates the findings are supported by substantial evidence[,]" this Court "may not disturb the findings of the [ZBA.]" *Metal Green Inc.*, 266 A.3d at 513. Accordingly, the ZBA properly concluded that Appellant met its burden of establishing the necessary criteria for a use variance.

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

Judge McCullough did not participate in the decision in this matter.

11

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| David Demko, Seth Hallam, and Nicholas Furar | : <br> : <br> : |
| v. | : <br> : <br> : |
| City of Pittsburgh Zoning Board of Adjustment, City of Pittsburgh, and Chekantz Clan, LLC | : <br> : <br> : <br> : |
| Appeal of: Chekantz Clan, LLC | :   No. 143 C.D. 2025 <br> : |

## O R D E R

AND NOW, this 4th day of May, 2026, the Allegheny County Common Pleas Court's December 30, 2024 order is reversed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David Demko, Seth Hallam, and    :
Nicholas Furar    :
    :
    v.    :   No. 143 C.D. 2025
    :   Argued: March 3, 2026
City of Pittsburgh Zoning Board of    :
Adjustment, City of Pittsburgh, and    :
Chekantz Clan, LLC    :
    :
Appeal of: Chekantz Clan, LLC    :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED


DISSENTING OPINION BY
PRESIDENT JUDGE COHN JUBELIRER        FILED: May 4, 2026

Upon review, I must, respectfully, disagree with the Majority that the City of Pittsburgh Zoning Board of Adjustment (ZBA) properly reviewed all criteria necessary under Section 922.09.E of the Pittsburgh Zoning Code (Code)[1] before granting the use variance requested by Chekantz Clan, LLC (Appellant). While I agree with the Majority's analysis regarding four of the five criteria necessary for a use variance, I disagree that the ZBA sufficiently addressed the second criterion in its Decision:

---

[1] ZONING CODE OF THE CITY OF PITTSBURGH, PENNSYLVANIA, § 922.09.E (2021), *as amended*.

That because of such physical circumstances or conditions, there is **<u>no possibility</u> that the property can be developed in strict conformity with the provisions of the zoning ordinance** and that the authorization of a variance is therefore necessary to enable the reasonable use of the property . . . .

Pittsburgh Code § 922.09.E (emphasis added).

Notwithstanding the "no possibility" language in the second criterion, our Supreme Court has held that an applicant for a variance is not required to show that their property "could not be used for **any** permitted purpose." *See Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 49 (Pa. 1998) (emphasis added). For example, a variance may be warranted even if a property is developable for a permitted purpose, where it can only be conformed to the zoning ordinance at a "**prohibitive cost**." *See Allegheny W. Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 689 A.2d 225, 228 (Pa. 1997) (emphasis added); *see also Halberstadt v. Borough of Nazareth*, 687 A.2d 371, 373 (Pa. 1997).

Upon careful review of the ZBA's Decision, I discern no findings or conclusions that expressly address whether Appellant met its burden of proving compliance with the second criterion. The ZBA Decision contains findings of fact that discuss the "impracticality" of building a structure on the Subject Property:

19. Ms. [Tracey] McCants Lewis explained that the Subject Property is long and narrow and extends along the rear of the Boyle Street parcels. **Building a structure on the Subject Property would be impractical and would block the view and light access of the existing Boyle Street houses**. Ms. McCants Lewis noted that the Subject Property has been this shape and size since before her family owned the parcel.

20. Ms. McCants Lewis also explained **why the topography of the site makes building impractical**. The Subject Property extends along Loraine Street, with a significant grade change from its width on Parkhurst Street to Press Way. Any development of the site for a

RCJ - 2

structure would require digging into the property's slope, **creating significant challenges for construction that are unique to the Subject Property**, as compared to the other parcels on Boyle Street, all of which are perpendicular to Loraine Street and the slope.

(ZBA Findings of Fact (FOF) ¶¶ 19-20 (emphasis added).)

The ZBA's conclusions of law also reference the "impracticality" of building a structure on the Subject Property:

> 8. Ms. McCants Lewis presented substantial and credible testimony to demonstrate that building a structure on the Subject Property is not economically viable. Specifically, Ms. McCants Lewis presented testimony that the Subject Property is **long and narrow** and extends along Loraine Street, behind the several Boyle Street parcels. (*See* Ex. 1-3.) **Building a structure on the Subject Property is impractical and would block the view and light access of the Boyle Street houses.** (*Id.*) Ms. McCants Lewis also explained that the topography of the site **makes construction on the site impractical**. Because the slope extends up Loraine Street, from Parkhurst Street to Press Way, any construction would require digging into that slope on the site. This makes **challenges unique to the Subject Property** as compared to the Boyle Street parcels and other properties on Loraine Street.

(ZBA Conclusions of Law (COL) ¶ 8 (emphasis added).)

In each of these findings and conclusions, the ZBA seems to have swapped the second criterion for a vague "impracticality" standard,[2] without any discussion

---

[2] Although the Majority notes that this Court previously affirmed a zoning hearing board's determination that an applicant's property could not be developed based on zoning restrictions and the property's unique physical characteristics where development for residential purposes would be "impractical," this finding of impracticality was based on the **testimony** of the applicant's two expert witnesses, who opined that developing the property for residential use would result in "net loss" or "unreasonable development costs" to the applicant. *See Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 812–13 (Pa. Cmwlth. 2005). Here, unlike in *Taliaferro*, Appellant did not offer testimony regarding whether the costs to develop the property are prohibitive. Although an applicant need not present evidence of the prohibitive costs to develop a property in conformity with a zoning ordinance in order to satisfy the second criterion in every case, I disagree **(Footnote continued on next page…)**

of whether development consistent with the Code is reasonably possible or whether such development may only be accomplished at prohibitive costs.[3]  If the ZBA intended the above findings and conclusions to satisfy its analysis of the second criterion, then it has confused the standard and committed error.  That it may be "impractical" to develop a property says nothing regarding whether a property may reasonably be developed in strict conformity with a zoning ordinance or whether such development is cost prohibitive.  For example, although the ZBA credits Ms. McCants Lewis' testimony that the slope of the Subject Property and its orientation being perpendicular to other parcels complicates construction of a structure, it finds only that construction would require digging—leaving open the possibility of reasonable, cost-effective development in conformity with the Code.  (Reproduced Record at 44a-45a, 87a; FOF ¶ 20; COL ¶ 8.)  Moreover, the ZBA's findings and conclusions do not adequately address whether it properly considered the second

with the Majority that Appellant presented **any evidence** sufficient to meet its burden under the second criterion, be it evidence related to prohibitive costs or otherwise.

[3] This "impracticality" language appears to derive from the testimony of Appellant's witness, Ms. McCants Lewis, who also used the word "impractical" when asked about building on the Subject Property in conformance with Code.  Absent from McCants Lewis' testimony is any discussion of whether development in conformity with the Code would be cost prohibitive:

> Q. Okay. And are there any hardships with **developing this property in conformance with the uses that would be permitted by the code**?
>
> A. Yes. I think, you know, the **shape and the size of a lot, it's very unique**. As you can see in the previous pictures, it's very narrow.  It **runs perpendicular** to a number of other lots on the block, and it runs for the entire length of the block. **It's really kind of impractical to use it to build on.**  It's been the same shape and size since the 19 – early 1900s.  It's a **steep slope** that goes down the hill. And again, it's – it's squeezed in between an [educational/medical institutional special purpose district] and a neighborhood commercial district, so we really have limited ability to build a residence or anything like that on that lot.

(Reproduced Record at 44a-45a (emphasis added).)

criterion. Specifically, while the ZBA cites narrowness and blockage of view and light access as grounds for concluding it is impractical to build a structure, no findings explain how these concerns conflict with the Code or make development in conformity with the Code cost prohibitive. (FOF ¶ 19; COL ¶ 8.) In sum, without the above "impracticality" paragraphs, which I believe do not specifically address the second criterion, the ZBA's Decision is silent on the second criterion. This is grounds to find that the ZBA erred. *See Haverford Township v. Zoning Hearing Bd. of Haverford Twp.*, 423 A.2d 757, 759 (Pa. Cmwlth. 1980) ("The board erred by not making findings on this basic issue plainly relevant to the application before it.").

It may be that Appellant's evidence concerning the Subject Property's narrow dimensions or grading could satisfy its burden as to the second criterion and that it would not be reasonably possible to build a structure on the narrow lot, given prohibitive costs, construction realities, or the Code and applicable setbacks.[4] However, where the ZBA Decision contains no findings or conclusions expressly addressing this second criterion or setbacks, it would be inappropriate for this Court to substitute its own findings and conclusions in place of the ZBA's own. Remand to the ZBA, therefore, is appropriate. *See Plum Borough v. Zoning Hearing Bd. of Borough of Plum*, 310 A.3d 815, 827 (Pa. Cmwlth. 2024), *reargument denied* (Mar.

---

[4] Appellees David Demko, Seth Hallam, and Nicholas Furar may urge us to find that Appellant cannot satisfy its burden as to the second criterion on remand, either because Ms. McCants Lewis' testimony does not adequately address possible development in strict conformity with the Code, or because Appellant has waived the setback issue by failing to introduce evidence or raise arguments on this issue before the ZBA. While I decline to substitute my judgment on the merits of whether setbacks preclude building a structure in strict conformity of the Code or make such development cost prohibitive, I do not find that the record precludes examination of this issue. Appellant presented relevant evidence in the form of maps, photos, and plans, from which the ZBA may discern the Subject Property's dimensions to analyze the effect of setbacks on possible development, to the extent deemed relevant, if at all, by the ZBA.

26, 2024) ("Remand is appropriate for a zoning hearing board to make the appropriate findings of fact and conclusions of law where they are absent.").

For the foregoing reasons, I must respectfully dissent from the Majority's reversal of the trial court's December 30, 2024 Order reversing the ZBA's Decision. Accordingly, I would vacate and remand with instructions for the ZBA to issue findings and conclusions related to the second criterion set forth above.

_____
RENÉE COHN JUBELIRER, President Judge