East Torresdale Civic Association, Appellant *v.* Zoning Board of Adjustment of the City of Philadelphia, et al., Appellees.

Argued June 6, 1984, before Judges ROGERS, CRAIG and BARBIERI, sitting as a panel of three.

*Richelle D. Hittinger,* for appellant.

*Mary Rose Cunningham,* Chief Assistant City Solicitor, with her, *Barbara W. Mather,* City Solicitor, for appellees, Zoning Board of Adjustment of the City of Philadelphia and the City of Philadelphia.

*Carl K. Zucker,* for intervening appellee, James Flannery.

OPINION BY JUDGE ROGERS, August 30, 1984:

East Torresdale Civic Association has appealed from an order of the Court of Common Pleas of Philadelphia County upholding the grant by the Philadelphia Zoning Board of Adjustment of several dimensional variances and a use variance to the appellee,

James Flannery, so that he might place what he calls a commercial condominium and seventy-six parking spaces on a vacant lot in the city's R-3 residential zoning district. The use variance, which is the essential point in this contest,[1] is needed because only detached and semi-detached single-family dwellings are permitted uses in the R-3 residential district and because the appellee's proposed commercial condominium consists of a row of thirteen attached stores.

The appellee's lot is in the shape of a tear drop; it is long, narrow and wider on one end than the other. It contains 1.196 acres. The long south lot line is the right-of-way of Grant Avenue upon which the proposed stores would front. Across Grant Avenue and facing the site of the proposed development are a single-family and four semi-detached dwellings, the owners of at least two of which are members of the Civic Association. The owner of one of these homes testified in opposition to the variances. The long north lot line of the lot is bounded by the Poquessing Creek. The short sides of the lot are bounded respectively by another public road on the east and a commuter railway line on the west.

The city's Department of Licenses and Inspections denied the appellee's applications for zoning permits and he applied to the zoning board for the mentioned variances, which the board granted. The court of common pleas, which received no evidence, affirmed.

The appellee's suit was, and is, bottomed on the authority of cases holding that the effect of zoning

---

[1] The applications for dimensional variances resolved themselves into a request for a reduction in rear yard setback requirements. It was treated below as wholly subsidiary to the overriding issue of the proposed commercial use of the lot, the reasonable implication being that grant or denial of the rear yard variances would perforce follow from the grant or denial of the use variances.

regulations, as particularly applied to the property of the applicant for a variance, may be restrictive to the point of confiscation and hence require the issuance of a variance permitting a reasonable use of the land.[2] This form of relief is called a "validity variance." *See* Ryan, Pennsylvania Zoning Law and Practice, §3.1.8(1). As can be seen, two of the circumstances essential to the grant of a validity variance are: first, that the effect of the regulations complained of be special to the applicant's property and not merely a difficulty common to other lands in the neighborhood, *Crafton Borough Appeal,* 409 Pa. 82, 185 A.2d 533 (1962); *Michener Appeal,* 382 Pa. 401, 115 A.2d 367 (1955); and second, that the effect of the regulation be, as we have said, confiscatory,[3] that is, such as to deprive the owner of the use of the property, *Nicholson v. Zoning Board of Adjustment,* 392 Pa. 278, 140 A.2d 604 (1958); *Berman v. Exley,* 355 Pa. 415, 50 A.2d 199 (1947), or, expressed in other terms, such as to destroy the value of the land altogether, or at least to reduce it to "the distress level where buying sharks can always be found." *Ferry v. Kownacki,* 396 Pa. 283, 287, 152 A.2d 456, 458 (1959).

---

[2] The appellee also urged that the topography of the lot adversely affected its suitability for the construction of dwellings; but we find nothing in the record other than a description of the lot by one witness as "sloping" which supports this assertion. Indeed, the appellee's real estate experts agreed that dwellings as well as stores could be located on the lot. There is also reference in the evidence to the possibility that the lot may be located in a flood plain where housing is forbidden. This was not proven. The zoning board's findings favorable to the appellee on both of these points are not supported by substantial evidence.

[3] This standard—that the regulation be shown to be confiscatory—applies to validity variances, not to the "normal" variance designed to adjust zoning regulation to the particular property. *See* Ryan, §6.1.7.

This case falls into a subclass of the general class just described, consisting of cases in which the applications were for validity variances permitting the commercial use of residentially zoned property in relief of the unnecessary hardship allegedly caused to the applicants' properties by the impact of surrounding nonresidential uses. *See,* Ryan, Pennsylvania Zoning Law and Practice, §6.4.5, for a collection of the cases in this subclass to the date of that writing.

To the cases collected by Mr. Ryan must be added the Supreme Court's recent decision in *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983), in which the applicant had sought, based on the commercial and industrial characteristics of the neighborhood, a validity variance which would permit her to use residentially zoned property for commercial purposes. The issue in the appeal to the Supreme Court was that of whether the applicant was required to produce direct evidence that her property was rendered ''practically valueless'' by the zoning restrictions, as this court held, or whether she had satisfied her burden of proving unnecessary hardship by adducing evidence concerning the neighborhood of quality and quantity sufficient to support as reasonable the board of adjustment's finding that ''the subject property is virtually surrounded by dissimilar and disharmonious commercial and industrial uses which render it virtually impossible to use the site for residential purposes.'' The Supreme Court reversed the order of this court and reinstated the zoning board of adjustment's grant of the variance, holding that the applicant was not required to adduce direct evidence[4] of the fact that her

_____
[4] The *Valley View* court wrote, however, that evidence of the owner's ability to sell his property has probative value. It follows that competent testimony of scant value and unsuitability of the

property was unusable and worthless as zoned but that it was sufficient that she show, as she had, that the commercial and industrial uses surrounding the property were such that the inference that the property was "virtually unusable and of scant value for traditional residential uses" might reasonably be drawn. *Id*. at 559, 462 A.2d at 642. We emphasize that the Supreme Court adhered to the principle that the seeker of a validity variance must prove that the existing zoning regulations render his property unusable and of "scant value" or "unmarketable for residential use." *Id*.

The residentially zoned property for which the validity variance was sought in *Valley View* was described by the Supreme Court as

> situated between a convenience store, open twenty-four hours a day, and a gas station, and that a bank and a retail tire store were across the street. In addition . . . a nursery business has been conducted from the premises. . . . [There were] a dentist's office and a beer distributor, in addition to the convenience store, to the north of . . . [the] . . . property. . . . [T]here were four garages, an office and a cocktail bar opposite the property as well as a bank and the tire store. [The zoning board's visual inspection showed] the existence of the following uses on the east side of Ridge Avenue, the side on which the property was situated. . . : [F]illing station, beauty shop, barber shop, farm and golf supply, dwelling, haber-

property as residentially zoned would likewise be probative. The point of the *Valley View* holding is that these necessary factual indices of hardship may be shown by evidence of neighborhood conditions based on which the Board may infer unsuitability and worthlessness.

dashery, vacant dwelling and store, beer distributor with large warehouse and two large , ice dispensing machines on Ridge Avenue, two twin dwellings, Seven Eleven Store, subject property, filling station, twin dwelling, vacant lot, dwelling, rubbish removal business, vacant lot, dwelling, Phila. Elec. Transformers. (Footnotes omitted.)

*Id.* at 557-558, 462 A.2d at 641.

The applicant for variance in this case, as the applicant in *Valley View,* failed to adduce direct evidence of the ''scant value'' of the lot as residentially zoned and, as we will see, little more than witnesses' expressions of conclusions of its alleged unsuitability for residential use. Citing *Valley View,* the applicant contends, nevertheless, that his evidence of incompatible neighborhood conditions was sufficient to support the zoning board's finding that residential development of the lot was not possible. We disagree.

The evidence of surrounding uses in this case is much different from that in *Valley View* and in our view does not support the zoning board's finding of the unsuitability of the lot for residential uses. As we have noted, it is bounded in front by a public road across from which are four semi-detached dwellings and a single home; it is bounded on the rear by Poquessing Creek on the opposite bank of which is a residential condominium. Poquessing Creek flows into the Delaware River a few hundred yards from the property. Along the side of the river are more residential condominiums and a church conference center. Across Grant Avenue, on which the lot faces, and to the north of the houses fronting that street is a portion of the Torresdale station parking lot and more single or semi-detached residences.

The aerial photographs suggest that the principal use of the surrounding area is residential—a mix of homes and apartments gathered in the vicinity of the commuter railway stop and Interstate Highway I-95. As may be expected, there are stores in the immediate vicinity of the station but these appear not to be within sight of the applicant's lot. We observe, based on a zoning map of the immediate vicinity which is in the record, that these stores, as well as the station, parking lot, may be located within a zoning district in which other than residential uses are permitted. In any case, in contrast with the location of the property under consideration in *Valley View*, there appear to be no commercial or industrial uses in the immediate presence of the applicant's lot on Grant Avenue.

The applicant adduced the testimony of a witness engaged in real estate management and consulting who testified that the general neighborhood could be described as one of mixed uses; that in addition to houses and apartment dwellings there were the commuter railroad station and its parking lot and the stores we have already mentioned. None of the non-residential uses are more precisely located than this.

The applicant's other witness, a real estate appraiser, also described the neighborhood as one of mixed uses. The burden of his testimony was that the applicant's proposal would be a proper use of the lot and not detrimental to the existing residential uses. Invited to express his opinion as to whether the site could "feasibly be developed for R-3 residential zoning," he testified, "In my judgment, that would not be a proper use of the land." Indeed, the applicant's case and the board's decision were centered on the thesis that the applicant's proposal would be beneficial to the neighborhood because it

20

would provide shopping facilities. The board found that "the development proposal will fulfill a need for additional shopping facilities which are presently inadequately met by other locations a distance of two miles from the proposed site." This finding, of course, depicts a neighborhood in which there is a scarcity rather than a plethora of commercial uses. It also suggests that the board of adjustment viewed its function as that of deciding which of residential or commercial was the better use of the lot rather than that of adjudicating whether the applicant had established a case for a validity variance by demonstrating that his lot was rendered virtually unusable and of scant value for traditional residential uses.[5]

In sum, we are constrained to hold that this record does not contain substantial evidence that "extensive commercial and industrial uses in the immediate vicinity rendered . . . [this lot] . . . virtually unusable and of scant value for traditional residential purposes" and that the board's finding that residential use of the lot is not possible because of the "surrounding land uses in the area" is therefore without support.

---

[5] The Civic Association adduced opinion testimony to the effect that the land could be used for residential development and that the applicant's proposed shopping center would be detrimental to the neighborhood because it would increase traffic and people at an already congested place.

The City Planning Commission reported to the board of adjustment its recommendation that the permitted use of the property for residential purposes only should continue and its finding that there were undeveloped parcels of land in the neighborhood zoned for commercial use more suitable than this lot for commercial development. We observe that Section 14-1802 (1) (1) of the Philadelphia Zoning Code requires the zoning board of adjustment to consider as a criterion of decision "that the grant of the variance will not adversely affect the Comprehensive Plan for the City by the City Planning Commission."

We will reverse the board's order on the ground just described but pause before concluding to observe that we agree with the Civic Association that the board erred in another respect.

The Civic Association's counsel on cross-examination asked the applicant's witnesses whether in their opinion it would be feasible to locate residential improvements other than single-family or semi-detached dwellings on the lot. The presiding board member shut off this line of questioning because, as we understand the ruling, the only issue for decision of the board was that of whether the board should require that the lot remain subject to the restrictions of the ordinance or whether it should permit the applicant to develop the lot by erection of stores. Later in the hearing, a representative of the Civic Association attempted by use of a drawing to show, again as we understand the record, that a type of residential use other than for single-family or semi-detached dwellings could be appropriately placed on the lot. An objection to this presentation was sustained.

The Civic Association contends that these exclusions constituted error because under settled principles of law relating to variances the board should not grant a variance greater than the minimum variance necessary to afford relief. The Civic Association cites in this regard Section 912(5) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10912(5), which provides that a "variance, if authorized, ... [shall] ... represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue."

The applicant counters that the MPC is not effective in Philadelphia (Section 105 of the MPC, 53 P.S.

§10105) and that the Philadelphia Zoning Code has no express provision similar to that of Section 912(5) of the MPC. It does not follow from this as the City suggests, that in Philadelphia if a variance is to be granted it must be granted in the exact terms sought by the applicant and without hindrance of the time-honored condition that the relief granted should not exceed that necessary to cure the applicant's alleged hardship. The Act of General Assembly which describes the powers and duties of the Philadelphia Board of Adjustment is Section 8 of the Act of May 6, 1929, P.L. 1551, as affected by the Act of April 28, 1978, P.L. 202, 53 P.S. §14759. This legislation empowers the Philadelphia Board of Adjustment to authorize variances in the same terms as the enabling acts of other municipal subdivisions which, like the legislation relating to Philadelphia, long antedate the MPC. Courts under those grants of powers have required that where the applicant's relief can be alleviated by one of several variances the lesser variance should be granted. The example provided by Mr. Ryan in his work on Pennsylvania Zoning Law and Practice at Section 6.2.14 is that of *Andress v. Zoning Board of Adjustment*, 410 Pa. 77, 188 A.2d 709 (1963) where the Supreme Court in effect held that the land developer in that case should not be granted a variance for apartment use of his property unless he could show that the use of the property as a single-family residence allowed by the zoning ordinance was impractical. Also, it is generally recognized that Section 912 of the MPC was intended to state the principles governing the grant of the variance existent at the time of its enactment. *See Campbell v. Zoning Hearing Board of Plymouth*, 10 Pa. Commonwealth Ct. 251, 310 A.2d 444 (1973).

Further, we find nothing in the Philadelphia Zoning Code which suggests that the standard of least necessary variance should not apply. For instance, Section 14-1801(1)(c) repeats the language of the enabling statute to the effect that a variance will be granted when not contrary to the public interest where "a literal enforcement [of the Code] would result in unnecessary hardship and so that the spirit [of the Code] shall be observed and substantial justice done."

Hence, the board of adjustment also erred in refusing to receive evidence tending to show that a variance from the zoning regulation less extreme than allowing commercial use would afford relief.

The order of the court of common pleas is reversed and the order of the Philadelphia Board of Adjustment granting variances is set aside.

ORDER

AND Now, this 30th day of August, 1984, the order of the Court of Common Pleas of Philadelphia County is reversed and the order of the Philadelphia Board of Adjustment granting variances to James Flannery is set aside.