578 A.2d 1369

**Thomas A. JONES, Sr., Appellant,**

**v.**

**ZONING HEARING BOARD OF the TOWN OF McCANDLESS, Appellee.**

Commonwealth Court of Pennsylvania.

Argued June 12, 1990.

Decided Aug. 15, 1990.

Donald P. Graham, Dillon, McCandless & King, Evans City, for appellant.

Paul A. Lagnese, with him, Gary J. Gushard, Tucker & Arensberg, P.C., and J. Howard Womsley, Pittsburgh, for appellee.

Before CRAIG, President Judge, PALLADINO, J., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Thomas Jones, Sr. (Landowner) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) affirming a decision of the Zoning Hearing Board of the Town of McCandless (Board) upholding the validity of the Planning and Zoning Code of the Codified Ordinances of the Town of McCandless (Ordinance).

In 1987, the Town of McCandless (Town) amended its Ordinance, re-zoning a portion of Town along McKnight Road into a newly created D–Development District (D–Dis-

trict). The Ordinance employs a zoning technique called "performance zoning" in the D–District. Performance zoning is designed to permit a wide range of uses which gives the developer flexibility in developing land.[1] The zoning technique protects adjacent properties by requiring bufferyards of varying sizes depending on the uses involved. The Ordinance also established standards for the preservation of sensitive natural resources such as woodlands, streams, and steep slopes.

Landowner, who owns land in the D–District, filed a petition with the Board challenging the validity of the Ordinance pursuant to Section 1004 of the Pennsylvania Municipalities Planning Code (MPC).[2] The Board, after holding three hearings on the matter, found that the Ordinance was valid, and dismissed the petition for lack of standing because Landowner had allegedly failed to submit plans of construction as required by section 1004 of the MPC. Landowner appealed to the trial court which found, without taking additional evidence, that although Landowner had standing because he had submitted plans as required by the MPC, Landowner's claims that the Ordinance was invalid were not meritorious.

On appeal to this court,[3] Landowner contends that the Ordinance violates the taking clause of the United States Constitution.

A zoning ordinance is presumed to be valid. *Boundary Drive Associates v. Shewsbury Township Board of Supervisors*, 507 Pa. 481, 491 A.2d 86 (1985). The party challenging the validity of an ordinance has the heavy burden of

1. Landowner does not challenge the constitutionality of the use of performance zoning.

2. Act of July 31, 1968, P.L. 805, *formerly* 53 P.S. § 11004, repealed by Section 100 of the Act of December 21, 1988, P.L. 1329. A similar provision is now found at 53 P.S. § 10916.1.

3. Where the trial court does not take additional testimony, our scope of review of a zoning hearing board's decision is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, or findings of fact are supported by substantial evidence. *Kassouf v. Zoning Hearing Board of Scott Township*, 112 Pa.Commonwealth Ct. 182, 535 A.2d 261 (1987).

proving that the ordinance is invalid. *Id.* A "land use regulation can effect a taking if it 'does not substantially advance legitimate state interests, ... or denies an owner economically viable use of his land.'" *Keystone Bituminous Coal Association v. DeBenedictis,* 480 U.S. 470, 485, 107 S.Ct. 1232, 1242, 94 L.Ed.2d 472 (1987), quoting *Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

The first prong of the taking analysis requires a determination of whether the Ordinance substantially advances a legitimate state interest. An ordinance which promotes the public health, safety, morals, or general welfare of the community and is substantially related to the purpose which it purports to serve substantially advances a legitimate state interest. *McClimans v. Board of Supervisors of Shenango Township,* 107 Pa.Commonwealth Ct. 547, 529 A.2d 562 (1987). However, ordinances may not be unreasonable, arbitrary, or confiscatory. *National Land and Investment Company v. Kohn,* 419 Pa. 504, 215 A.2d 597 (1965).

■ Landowner contends that, although Town has the authority to regulate forests and steep slopes pursuant to Section 604 and 605 of the MPC, the Ordinance is invalid because it is arbitrary, and unreasonable in the manner in which steep slopes [4] and forests [5] are defined and the re-

---

4. A steep slope is a "[l]and area where the inclination of the land's surface from the horizontal is twelve (12) percent or greater. Article 1311.04(a)(110) of the Ordinance. The following building restrictions apply to areas of steep slopes:

   (1) Twelve (12) to less than fifteen (15) percent slope: no more than forty (40) percent of such areas shall be developed and/or regraded or stripped of vegetation.

   (2) Fifteen (15) to twenty-five (25) percent slope: no more than thirty percent (30) of such areas shall be developed and/or regraded or stripped of vegetation, with the exception that no more than twenty (20) percent of such areas may be disturbed in the case of landslide prone area.

   (3) More than twenty-five (25) percent slope: no more than fifteen (15) percent of such areas shall be developed and/or regraded or stripped of vegetation, with the exception that no more than five (5) percent of such areas may be disturbed in the case of landslide prone area.

5. See note 5 on page 438.

strictions placed on them. Landowner contends that there is no scientific or engineering basis for the definitions or the related restrictions.

Prior to amending the Ordinance, Town contracted with UDA Architects (UDA) to conduct the McKnight Road Corridor Study. Based on its study, UDA recommended

Article 1314.03(e) of the Ordinance.

5. Forest is defined as an "[a]rea containing mature woodlands, woodlands, and/or young woodlands." Article 1311.04(a)(61). Woodland is "[a]n area of planted material covering one (1) acre or more consisting of thirty (30) percent or more canopy trees having an eight (8) inch or greater caliper, or any grove consisting of eight (8) or more trees having a ten (10) inch or greater caliper." Article 1311.-04(126) of the Ordinance. Mature woodland is "[a]n area of plan (sic) material covering one (1) acre or more and consisting of thirty (30) percent or more canopy trees having a sixteen (16) inch or greater caliper, or any grove consisting of eight (8) or more trees having an eighteen (18) inch or greater caliper." Article 1311.04(127) of the Ordinance. Young woodlands are "[a]n area of plant material covering one (1) acre or more and consisting of seventy (70) percent or more canopy trees having a two and one-half (2.5) inch caliper or greater, or a tree plantation for commercial or conservation purposes where seventy (70) percent or more of the canopy trees have a two and one-half (2.5) inch or greater caliper." Article 1311.04(128) of the Ordinance.

The Ordinance provides the following building restrictions:

(1) No more than fifteen percent of any mature woodland may be cleared or developed. The remaining eight-five (85) percent shall be maintained as permanent open space. No more than thirty (30) percent of any woodlands may be cleared or developed. The remaining seventy (70) percent shall be maintained as permanent open space. No more than sixty (60) percent of any young woodland shall be cleared. The remaining forty (40) percent shall be maintained as permanent open space.

(2) Replacement of Woodlands Credit. In the case of mature woodlands, the developer may clear or develop more than the area otherwise permitted to be disturbed by this section, provided that the total mature woodland or woodland area disturbed shall not be increased by more than fifty (50) percent of the area otherwise permitted to be disturbed. No more than twenty-two and one-half (22.5) percent of mature woodlands may be disturbed. No more than forty-five (45) percent of woodlands may be disturbed. In addition:

(a) The developer shall designate a new woodland area on a part of the site not forested.

(b) The new woodland area shall consist of 1.2 times the surface acreage of the woodland area disturbed pursuant to this subsection.

(3) No clearing or timbering of any woodlands may occur unless connected with an approved site plan.

Article 1314.03(d) of the Ordinance.

that Town amend the Ordinance which amendments were adopted. The Board made the following pertinent finding:

> That in connection with the development of the [amendment of the Ordinance], a number of different characteristics were examined: the physical land forms and physical conditions along McKnight Road with each of the undeveloped sites in the subject two mile stretch; the surrounding uses and surrounding densities; the relationship to the yet-to-be developed parcels along McKnight Road; traffic patterns; the capacity of the road system; appropriate densities, appropriate uses and appropriate tools.

Finding of Fact 25. The Ordinance was amended as a comprehensive plan to permit development in the D–District while preserving the sensitive natural resources such as the steep slopes, forests, flood plains and streams. The Ordinance weighs the maintenance of the ecological balance in the D–District with the property owner's right to develop his property. Upon review of the record and the regulations attacked, we conclude that the challenged portions of the Ordinance are not arbitrary or unreasonable, but rather substantially related to the purpose which they purport to serve. *McClimans.*

█ Landowner next contends that the Ordinance deprives him of a viable use of his property because Landowner will not be permitted to build on about 70% of his property as a result of the Ordinance. However,

> " '[t]aking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature of the interference with the rights in the parcel as a whole ..."

*Penn Central Transportation Company v. New York City,* 438 U.S. 104, 130, 98 S.Ct. 2646, 2662, 57 L.Ed.2d 631 (1978).

Landowner concedes that there is no significant difference between the buildable area on his property under the prior Ordinance and the amended Ordinance. The property just cannot be developed as intensively for residential purposes as it could prior to the amendment of the Ordinance. However, Landowner presented evidence that the property could still be developed into 89 residential units [6] or 150,000 square feet of commercial space. Town's expert estimated that the property could be used for 100 town house or 168,000 square feet of commercial space. It is clear from the evidence presented that Landowner has not been deprived of the viable use of his property.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, August 15, 1990, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.

---

6. In reaching this figure, Landowner's expert admitted that he had used the recreational area requirements which were provided in the prior Ordinance rather than the amended Ordinance.