## West Park Civic Association v. Zoning Hearing Board of the City of Allentown

C.P. of Lehigh County, nos. 2001-C-2399 and 2001-C-2406.

*Maryesther S. Merlo,* for appellant West Park Civic Ass'n.

*Henry S. Perkin,* for appellant Bayham Antiques.

*Frances A. Fruhwirth,* for appellee Z.H.B.

*Neil D. Ettinger,* for intervenor Grace United Evangelical Church.

*Francis P. Burianek,* for intervenor City of Allentown.

FORD, *J.,* June 27, 2002—These consolidated zoning appeals raise interesting issues about the continued use of an architectural treasure in the City of Allentown, Grace United Evangelical Church, a neo-Gothic edifice located at 15th and Turner Streets.

Bayham Antiques Ltd. tendered a proposed written agreement of sale to Grace United Evangelical Church, the present owner of the building and lot, to buy the property for $300,000. The proposed agreement was accompanied by a down payment of $30,000. Bayham wants to use the church as a fine art antique business. The property is located in a medium high density residential district. A church is a permitted use in this district but an antique business is not. Accordingly, Grace Church and Bayham filed a zoning application for a variance. It was denied by the zoning officer. Grace Church and Bayham appealed to the zoning hearing board of the City of Allentown which granted the variance.

One of the objectors at the hearings before the board was one of the appellants herein, West Park Civic Association, which describes itself as a non-profit community group with a mailing address only a few doors from the church. West Park presents various reasons as to why the variance should have been denied, and we will address each of those below. Bayham also appealed the decision of the board on the basis that conditions placed upon the grant of the variance were unreasonable.

We begin by discussing our limited scope of review. In an appeal from a zoning board decision where, as here, no additional testimony or evidence is taken, our review

is limited to determining if an error of law or an abuse of discretion occurred. *East Torresdale Civic Association v. Zoning Board of Adjustment,* 536 Pa. 322, 325, 639 A.2d 446, 448 (1994). An abuse of discretion can only be found if a board's findings are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 640 (1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support its conclusion." *Id.*

After our review of the record and the excellent briefs and arguments of the attorneys, we conclude that the board acted in accord with its authority in case 2001-C-2399 so we deny West Park's appeal. We grant the appeal in case 2001-C-2406 by remanding to the board for clarification of a point and by our correcting an ambiguity in a provision of the board's order on a separate issue.

## PROCEDURAL HISTORY

The zoning hearing board conducted hearings on Grace Church's and Bayham's request for a variance on June 4, and June 25, 2001. The transcripts of those hearings are part of the record. The board met again on July 23, 2001, to decide the request for zoning relief. By a two to one vote, it granted the variance with conditions attached. Its written decision is dated August 8, 2001, and includes findings of fact. Under the board decision, Bayham may convert the church into a wholesale antiques dealer shop.

On September 7, 2001, West Park appealed the grant of the variance to us (2001-C-2399). Grace Church and Bayham intervened in this appeal.

The board attached six conditions to the grant of the variance. Only the fifth and sixth conditions were challenged by Bayham in the appeal to us that it filed on September 7, 2001. The City of Allentown intervened in this appeal. Condition five reads: "The cultural events will be by invitation only and shall not exceed four per year." Condition six reads: "The number of individuals who will come by appointment to the premises shall not exceed three to five per week."

We consolidated the two cases by our order of February 12, 2002.

On February 12, final argument on the consolidated appeals was conducted. We have reviewed the substantial record developed before the board. As stated previously, the record developed before the board was not supplemented with evidence taken before our court. We now explain the reasons for our ruling. The facts stated in the discussion which follows are gleaned from the board's findings of fact and transcribed notes of testimony.

### DISCUSSION AND CONCLUSIONS OF LAW

Construction on the church began in 1905 and was finished in 1922. The church has the capacity to hold up to 400 people. No off-street parking is or ever has been available for the use of the church.

The area surrounding the church is primarily residential. There are a number of commercial uses in the immediate vicinity of the church including a pizza shop, a steak shop, a laundromat and funeral homes.

Church membership has dwindled over the years. In the 1960s, membership was almost 500 people. In the 1980s, the membership was between 150 and 160 people.

Even in the 1980s, with the lower membership, the church was used almost daily. There were Sunday school, church services, choir practice and youth activities. Many of the people who attended the activities used vehicles. Use of the church on Sundays was particularly intensive and involved as many as 40 to 50 vehicles. During the holiday season, church use was also intense and produced congestion on the streets near the church.

In 1994, Grace Church took formal action to sell the building to move to a new location. The property was initially listed for $650,000. One indicator of the value of the property was the securing of insurance for the church in 1999 with a replacement cost determined to be $3,431,790.

The findings of fact chronicle the aggressive and meaningful efforts made in succeeding years to sell this property. Thus, in 2000, the asking price was reduced to $350,000.

In approximately 1999, Grace Church vacated the property and began leasing it to other congregations. At one time, there were four congregations which simultaneously occupied the site. One of the tenants is known as the Church of God.

The property has an outstanding mortgage balance of approximately $238,000. The mortgage was created so that the property could be used as collateral for other property bought by Grace Church in Whitehall Township for its new church. In addition to servicing this

mortgage, Grace Church pays all costs of maintaining the building including heating, electric, insurance, gas and water. These costs total approximately $1,000 per month. These costs are not the responsibility of the tenants.

The Church of God expressed interest in purchasing the property. Although the asking price at the time of inquiry from the Church of God was $350,000, Grace Church indicated that it would consider a $300,000 offer if it included a deposit. A formal offer and deposit were never submitted by Church of God.

A formal offer was submitted for the purchase of the property by Bayham. The offer was for $300,000 and was accompanied by a cash deposit.

Finding of fact 30 summarizes this marketing experience for Grace Church.

The offer of $300,000 by Bayham Antiques was the only bona fide offer ever received for the purchase of this structure in the six years in which it has been listed for sale, notwithstanding the fact that the broker had contacted between 50 and 100 churches for the purpose of selling the property as a church.

Bayham intends to refurbish the exterior and interior of the property. The design of the exterior will remain as it always has been. The only significant change to the interior of the church will be the removal of church pews which will be stored in the basement.

Bayham will use the building to display fine antique items. This will not be a retail business and will not be open to the general public. Viewing of the antique items will be by invitation only. Bayham estimates that three

to five individuals per week will come to the premises to view the antiques. Approximately four times per year Bayham plans to have cultural activities take place at the building. It is anticipated that 100 to 150 people will attend these functions.

In addition to the four cultural events each year, Bayham proposed to hold four receptions per year, which will occur when prospective purchasers are invited to view a large collection of art work. It is anticipated that no more than 100 people will attend each of these receptions.

The cultural events will be held from 5 p.m. to 8 p.m. on designated evenings. The receptions would be held from 6 p.m. to 9:30 p.m. on designated evenings.

The board approved Bayham's request for four cultural events per year which must be by invitation only. However, the board, in its opinion and order, is silent in regard to the request that Bayham be permitted to have four receptions per year.

According to the testimony, the original stocking of the church building, under Bayham's plans, will generate additional traffic in the area. However, the delivery and pick-up of items after that will occur no more than two times per week. Automobiles, sport utility vehicles or small vans will be used for the routine delivery and pick-up of items after the initial stocking.

A number of years ago, the City of Allentown designated a 30-foot area on 15th Street (in front of the church, 15 feet from the intersection) as a pick-up and drop-off zone. This pick-up and drop-off zone will be used to transport art work. In addition, pick-up and delivery of art

work can occur in the alley behind the church (Newton Street), where the pick-up and delivery of other items for the church has occurred for many years.

Bayham has restored three other buildings, two of which were formerly churches. Photographs of the refurbishing work done by Bayham on the other structures were introduced into evidence.

Bayham also proposes a dwelling unit be constructed in the church for a caretaker for the property. This request was approved by the board. However, the board provided that no rent shall be charged for the dwelling unit and no portion of the premises may be leased to another entity.

In taking its appeal, West Park argues that the board committed an error of law in granting the use variance to Grace Church and Bayham. We conclude that the board's findings of fact are supported by substantial evidence and an error of law was not committed in granting the variance.

Grace Church and Bayham require a use variance in order to proceed with its proposal because the use of the church building as a fine arts antique business is not permitted in this medium high density residential district. A dimensional variance from the off-street parking requirements of the zoning ordinance will also be required for Bayham's proposed use. The zoning ordinance requires eight off-street parking spaces but no off-street parking spaces are available. We first address the use variance and then the parking issue.

The type of use variance sought by Grace Church and Bayham is actually a "validity variance." A party who

questions the substantive validity of a zoning ordinance, while requesting a variance from the provisions of the ordinance, seeks a validity variance. A validity variance differs from the normal variance in that the normal variance is granted to adjust the zoning regulation to a particular property. A validity variance is granted where the zoning regulation is restrictive to the point of confiscation and a variance is necessary to permit a reasonable use of the land. In order to obtain a validity variance, the applicant must establish (1) the effect of the regulations complained of is unique to the applicant's property and not merely a difficulty common to other lands in the neighborhood and (2) that the regulation is confiscatory to the point that it deprived the owner of a reasonable use of the property. An applicant for a validity variance can establish the confiscatory nature of the zoning ordinance by proving that the land has no value or only distress value as a result of the regulation. *Shohola Falls Trails End Property Owners Association Inc. v. Zoning Hearing Board of Shohola Township,* 679 A.2d 1335 (Pa. Commw. 1996), *alloc. denied,* 548 Pa. 651, 695 A.2d 788 (1997); *Hersh v. Zoning Hearing Board of Marlborough Township,* 90 Pa. Commw. 15, 493 A.2d 807 (1985); *Somerton Civic Association v. Zoning Board of Adjustment,* 94 Pa. Commw. 271, 503 A.2d 500 (1986); *East Torresdale Civic Association v. Zoning Board of Adjustment,* 85 Pa. Commw. 12, 481 A.2d 976 (1984); *In re Appeal of deBotton,* 81 Pa. Commw. 513, 474 A.2d 706 (1984).

The party who seeks the validity variance, a declaration that an otherwise valid ordinance is confiscatory when applied to a particular tract of land, must also com-

ply with the statutory requirements for a variance under the Pennsylvania Municipalities Planning Code (MPC). *Boundary Drive Associates v. Shrewsbury Township Board of Supervisors,* 81 Pa. Commw. 7, 473 A.2d 706 (1984), *aff'd,* 507 Pa. 481, 491 A.2d 86 (1985); *Appeal of Walter C. Czop Inc.,* 43 Pa. Commw. 499, 403 A.2d 1006 (1979); *A & D Inc. v. Zoning Hearing Board,* 32 Pa. Commw. 367, 379 A.2d 654 (1977).

Section 10910.2 of the MPC, 53 P.S. §§10101-11202, requires proof that:

"(1) The property has unique physical characteristics;

"(2) There is no possibility of development under the ordinance;

"(3) The unnecessary hardship was not created by the applicant;

"(4) The variance will not alter the essential character of the area; and

"(5) The variance is the minimum necessary for relief."

To the board's credit, it engaged in the proper analysis. It first inquired whether the burden of proving a legal hardship, that is, whether the regulation confiscates property, was sustained. It then analyzed the traditional criteria for a variance. It found that a legal hardship has been proven. We quote from the board's opinion to explain the decision that it reached.

"Over a seven-year period, despite repeated exposure to churches, no churches were in a position to make a bona fide offer for the property. Through the date of the hearing there was never a firm offer by any church to purchase the property. The board is placed in the posi-

tion of determining whether or not because of the physical characteristics of this building it has become impossible for the owner of the building to sell the property as a church or to use the same for a permitted use.

"There is a difference between selling the property as a church and giving the property away. Grace Church should not have its property in effect confiscated because it cannot locate a church who will make a bona fide offer to purchase the property at a reasonable price. The board is of the opinion that after seven years, because of the unique configuration of this particular structure, a hardship has been established which would permit Grace Church to sell the property for a use other than a church use. To deny this application would be tantamount to confiscating this particular property. There has been more than ample time to sell the property as a church and there simply have been no bona fide offers for the purchase. A fair market value of the property value has been established at approximately $300,000 as indicated by the bid which was received. The cost to maintain the property is approximately $1,000 per month exclusive of debt service. It would be unjust to require the Grace Church congregation to continue to bear the cost of maintaining this building when there appears to be no bona fide offer from a church to purchase the building. In the absence of a bona fide offer, it is the board's opinion, after weighing all the facts in this case, the applicants met the burden of proving a legal hardship."

Would a firm offer with a down payment ever come from the Church of God? The board reasonably concluded that Grace Church did not have to wait any longer after all of those years of trying to sell the property for

further church use. Besides, if the offer from Church of God materialized, it would have been a distress sale based upon the testimony pertaining to the value of the property. The board's conclusion that enforcement of the zoning regulation without a variance would be confiscatory based upon substantial evidence and was not legally improper.

We move then to consideration of the statutory requirements for a variance under the MPC. Of those that we have listed, West Park only challenges the third of the five requirements, namely, that the unnecessary hardship was not created by the applicant. According to West Park, Grace Church created its own hardship, namely, the possibility of a distress sale. West Park argues that it is improper to consider the $238,000 outstanding mortgage on the property because that burden was unnecessarily created by Grace Church so it had collateral for the purchase of the property for the new church. Also, West Park points to the monthly expenses that Grace Church must pay to maintain the property as an aspect of the alleged self-created hardship. It argues that the failure to sell the property at an earlier date is a function of the listing price's far exceeding the market value. Finally, it argues that the listing itself falsely advertises by stating that the property is "ready immediately for many purposes."

It was a proper exercise of discretion for the board not to conclude that the hardship was self-imposed. The purchase price of the property was gradually reduced to the point that Grace Church is willing to sell for a price more than 50 percent less than the original asking price. While we do not have an appraisal of the property in evidence, we do know its replacement value and there is substan-

tial evidence about the quality, appearance and artistic selling points of this building. There is no evidence that the property was marketed for more than its fair market value. Rather, there is substantial evidence before the board for it to conclude that market value was not exceeded by the asking price, particularly the $300,000 asking price. The evidence sets forth many factors to convey to the board the value of this property and to conclude, as it has done, that the rejection of the $300,000 offer, for zoning reasons, would be to place the property in jeopardy of an eventual distress sale. These points raised by West Park are trivial in comparison to the concern about a sale.

We parenthetically note that we do not understand how Grace Church's meeting its monthly obligations by the payment of the expenses associated with the property could be classified as self-created hardship. Likewise, there is neither evidence nor convincing argument that a listing which read that the property is "ready immediately for many purposes" is misleading.

The next argument by West Park is that the board committed an error of law in not specifically addressing article 1321.03 of the zoning ordinances of the City of Allentown. Article 1321.03A reads:

"Every building or structure having over 4,000 square feet of building area used for business, trade or industry and other uses involved in large volume receipt and distribution by vehicles of materials and merchandise shall provide space as herein indicated below for the loading and unloading of vehicles off the street or public alley. Such space shall be located to minimize conflicts with traffic along public streets and with dwellings."

Article 1321.03E reads:

"Off-street loading and unloading space shall be in addition to and not considered as meeting a part of the requirements for off-street parking space."

Although the board did not specifically refer to article 1321.03, it is undisputed that there was extensive testimony about the concerns addressed in that article. The board knew the volume and nature of the proposed drop-off and pick-up of materials to be done at this site. The board knew of the space designated on 15th Street which is available for this purpose as well as the past use and proposed use of Newton Street for these purposes. Thus, the record supports compliance with article 1321.03, without the need for a variance from that article.

The concerns of article 1321.03 were addressed through the testimony. That the article is not specifically mentioned in the order or opinion of the board is not reason to invalidate this authorized discretionary action by the board.

Although West Park did not brief the MPC's fourth requirement that the variance will not alter the essential character of the area and although this argument is therefore waived by West Park, the board's views on this subject are noteworthy.

"The board is of the opinion that this proposed use with conditions is an extremely minimal commercial use of this particular property. The exterior of the building will remain the same and in fact be improved. The interior of the building will remain the same or in fact be improved. There is little or no vehicular traffic involved

with this proposed activity. The activity is not open to the general public. When comparing the impact that the proposed use has on traffic, parking and congestion in the area, it is clear that the new use will be no more detrimental to the public health, safety and welfare than the previous use of this building. While the use is a business use, it is a minimal business use. The use is the minimum variance which would afford relief and represents the least modification possible in the granting of this application."

On several points, West Park relied heavily upon the dissenting view of the chairman of the board, Attorney Paul Laubner. The position of Attorney Laubner does not appear in the order or opinion, but he made an extensive statement on July 23, 2001, when the board met to reach its decision. Included in his comments was this:

"Quite frankly, I think probably the antique business would be less burdensome on the neighborhood than a church because of the number of people who will be using that facility compared to the number of people that will be using the church." Notes of testimony, 7/23/01, p. 11.

West Park's last challenge is to the notice of public hearing which West Park argues is deficient for failure to indicate that Grace Church and Bayham are requesting a variance from article 1321.03. For several reasons, the action of the board will not be set aside for alleged failure to provide a proper notice.

First, as we have indicated, under the evidence, there was no requirement for a variance from article 1321.03 because there is space for the loading and unloading of vehicles.

Next, "the purpose of a zoning board hearing notice is to inform potential protestants of the *general* nature of the application." *In re Appeal of Booz,* 111 Pa. Commw. 330, 335, 533 A.2d 1096, 1098 (1987) (emphasis in original); *Holmes v. Board of Zoning Appeals,* 130 Pa. Commw. 349, 568 A.2d 301 (1990), *alloc. denied,* 527 Pa. 620, 590 A.2d 760 (1990).

Our review of the notice indicates that it provided potential protestants of the general nature of the application. Forty-five objectors were present at the June 4, 2001 hearing and 26 objectors were present at the June 25, 2001 hearing. Information was given that Grace Church and Bayham were requesting permission to change the use of the property from a church to a fine art antique business and that a further variance from off-street parking requirements was necessary. Thus, potential protestants were advised of the general nature of the application with this notice.

Finally, we have the appeal by Bayham. There is merit to this appeal on the two points that are raised. However, we do not provide the exact relief that is requested.

Included in Bayham's proposed use of the property was up to four "cultural events" per year and up to four "receptions" per year. The board decision addresses the cultural events by allowing up to four per year by invitation only. There is no comment by the board about "receptions." As pointed out by counsel for Bayham, there is the possibility that the board believed receptions were the same as cultural events. Accordingly, we remand only this issue to the board for further hearing or deliberation as it sees fit to address whether Bayham should also be permitted receptions in addition to the four cultural events

that are authorized each year. Of course, the board should take into consideration the extensive testimony about the impact, whatever that may be, that this business will have on the neighborhood and the conclusions already reached by the board in that regard.

Bayham is correct that the sixth condition placed on the variance by the board is ambiguous. It reads: "The number of individuals who will come by appointment to the premises shall not exceed three to five per week." We remove the ambiguity by restating this condition as follows: "The number of individuals who will come by appointment to the premises shall not exceed five per week."

## ORDER

Now, June 27, 2002, after consideration of the record developed before the Zoning Hearing Board of the City of Allentown in these consolidated appeals, the briefs and arguments of the attorneys, and for the reasons set forth in the accompanying opinion, it is hereby ordered as follows:

(1) The appeal of West Park Civic Association in case 2001-C-2399 is denied in its entirety.

(2) The appeal of Bayham Antiques Ltd. in case 2001-C-2406 is granted in part and denied in part as follows:

(A) This matter is remanded to the Zoning Hearing Board of the City of Allentown for further deliberations to determine whether the variance granted to Bayham Antiques Ltd. includes authorization to conduct up to four receptions per year in addition to the already authorized four cultural events per year.

(B) Condition six stated in the zoning hearing board's order of August 8, 2001, is stricken and is replaced by the following: "(6) The number of individuals who will come by appointment to the premises shall not exceed five per week."