CHRIN BROTHERS, INC., Appellant,

v.

### WILLIAMS TOWNSHIP ZONING HEARING BOARD and Township of Williams.

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2002.
Decided Feb. 3, 2003.

John A. VanLuvanee, Doylestown, for appellant.

Brian M. Monahan, Easton, for appellee, Township of Williams.

Joseph A. Zator, II, Allentown, for appellee, Williams Township Zoning Hearing Board.

Before SMITH–RIBNER, J., PELLEGRINI, J., and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Chrin Brothers, Inc. (Landowner) appeals from a decision of the Court of Common Pleas of Northampton County (trial court) denying and dismissing its Land Use Appeal and affirming the order of the Williams Township Zoning Hearing Board (ZHB). We affirm.

On August 23, 2000, Landowner filed four zoning permit applications seeking to perform "Clear Cut Timber Operating and Support Activities" on five separate pieces of property owned by it in Williams Township, Northampton County. Landowner indicated that it would use the trees and vegetation harvested on its property in the manufacture of mulch. The size of the subject properties are 52 acres, 38 acres, 2.23 acres and 1.22 acres and are located in Low Density Residential (LDR), Light Industrial/Business (LI/B) and General Industrial (GI) zoning districts. By letters dated August 30, 2000, the Zoning Officer

denied Landowner's request for zoning permits because 1) Sections 1003 and 502 of the Williams Township Zoning Ordinance (Ordinance) do not permit by right "Commercial Forestry" in the LDR and LI/B zoning districts,[1] 2) Sections 1402.-A.19 (d), (e), (f), (g), and (h) of the Ordinance prohibit "clear cutting" and 3) Section 1516 of the Ordinance set forth a policy of preserving trees and forests.

On September 27, 2000, Landowner appealed the Zoning Officer's decision to the ZHB. Landowner asserted that, although the Ordinance does not permit forestry activities in the zoning districts in which the subject properties are located, Section 603(f) of the Municipalities Planning Code (MPC)[2] permits forestry activities as of right in all zoning districts in every municipality. In the alternative, Landowner requested that the ZHB grant it a variance.

By decision dated April 26, 2001, the ZHB agreed with Landowner in part and found that Sections 502, 1003 and 1102 of the Ordinance are invalid because they prohibit commercial forestry by right in the LDR, LI/B and GI zoning districts in derogation of Section 603(f) of the MPC, which provides that "forestry activities, including, but not limited to, timber harvesting, shall be a permitted use by right in all zoning districts in every municipality." 53 P.S. § 10603(f). Accordingly, the ZHB recommended that the Board of Supervisors of Williams Township amend the Ordinance to conform to Section 603(f).

However, the ZHB also found that, although forestry may not be prohibited in any zoning district, the MPC does permit the reasonable regulation of forestry activities. The Section of the Ordinance that regulated commercial forestry is Section 1402(A)(19) which provided, in relevant part, that:

b. A Forestry Management Plan shall be prepared and followed for any forestry involving more than 2 acres. This Plan shall be prepared by a professional forester.

c. The Forestry Management Plan shall be consistent with the Timber Harvesting Guidelines of the PA. Forestry Association.

d. Clearcutting shall be prohibited except on tracts of less than 2 acres. This provision shall not apply to State Game Lands where clearcutting is done to benefit the natural habitat.

e. On tracts larger than 2 acres, at least 30 percent of the forest cover (canopy) shall be kept and the residual trees shall be well distributed. At least 30 percent of these residual trees shall be composed of a higher value species as determined by a professional forester.

f. An Erosion and Sedimentation Control Plan shall be submitted to the County Conservation District for any review and recommendation.

g. Reforestation shall be required except for areas proposed for buildings, streets and utilities on an approved plan.

h. Clear cutting is prohibited on areas with slopes greater than 25 percent or within the 100–year floodway.

At the hearings before the ZHB, Landowner asserted that it was challenging the validity of subsections (d) and (e) and (h) of the Ordinance. In support of its contention that these subsections unreasonably restrict forestry activities, Landowner

1. As set forth above, part of the subject property is also in a GI zoning district. Although not stated by the Zoning Officer, Section 1102 of the Ordinance also prohibited commercial forestry by right in GI zoning districts.

2. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10603(f).

presented the testimony of Daniel Gerber, a consulting forester who holds a bachelor's degree in forest science. The ZHB accepted Mr. Gerber as an expert in the field of forestry. Mr. Gerber prepared a Forestry Management Plan consistent with the timber harvesting guidelines of the Pennsylvania Forestry Association and testified that if Landowner was granted permission to clear cut the subject properties, such clear cutting could be conducted in accordance with the Pennsylvania Forestry Association guidelines without any adverse impact on public health, safety or welfare. Mr. Gerber also testified that the cumulative effect of subsections (d) and (h) of Section 1402(A)(19) of the Ordinance unreasonably restrict forestry activity on the subject properties. (N.T. 11/30/2000, pp. 97–98).

In opposition, Williams Township presented the testimony of Ronald Madison. Mr. Madison is a licensed professional engineer in Pennsylvania and is also the Williams Township engineer and an employee of Hanover Engineering Associates. Mr. Madison was the author of and the motivation behind the Williams Township Comprehensive Plan Amendments in September of 2000, and Hanover Engineering provided the planning and engineering work in the compilation of that plan. (N.T. 2/07/02, p. 32). Part of that plan deals with building limitations and addresses steep slopes of greater than 15 percent inclination and floodplains. Mr. Madison testified that, based on topographical maps, a majority of Landowner's property is on a 15 to 25 percent or greater slope. Mr. Madison testified that clear cutting in areas with a slope of greater than 15 percent would increase erosion of the soil. He also stated that "[t]here was testimony that if you left the root system of the stumps, that would hold the soil in place. But the canopy itself that is made up of the forest helps protect those soils.

It helps absorb some of the water with the initial rainfall. And it acts as a shield basically protecting the soils from the initial impact that is part of the erosion process. If you take away the canopy, you take away part of the soil erosion protection of the forest of the soils." (N.T. 2/07/01, p. 42). On cross examination, Mr. Madison conceded that any development where the earth is disturbed, not just timber harvesting, has a tendency to increase erosion.

After considering the above testimony, the ZHB issued a decision on April 26, 2001 wherein it found the testimony of Mr. Madison more credible than the testimony of Mr. Gerber with regard to clear cutting on steep slopes. Furthermore, the ZHB rejected Mr. Gerber's conclusion that the Ordinance is unreasonably restrictive. Accordingly, the ZHB concluded that the restrictions on commercial forestry set forth in subsections (d), (e) and (h) are not unreasonably restrictive of forestry activities and are therefore valid. With regard to Landowner's request for a variance, the ZHB determined that Landowner has shown by its own evidence that the subject property can be used for forestry activities in compliance with the Ordinance. Therefore, variances are not necessary to enable the reasonable use of its land. Furthermore, the ZHB determined that Landowner failed to show that the Ordinance imposes an unnecessary hardship on its property. On May 21, 2001, Landowner filed a Land Use Appeal with the trial court, which affirmed the decision of the ZHB without taking any additional evidence. This appeal followed.

 When the trial court does not take any additional evidence, our scope of review is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. *Diver-*

*sified Health Associated, Inc. v. Zoning Hearing Bd. of Borough of Norristown,* 781 A.2d 244, 246 (Pa.Cmwlth.2001). The zoning hearing board's role is that of the factfinder, and "[a] conclusion that the Board abused its discretion may be reached only if its findings are not supported by substantial evidence." *Constantino v. Zoning Hearing Board of Borough of Forest Hills,* 152 Pa.Cmwlth. 258, 618 A.2d 1193, 1195 (1992). Additionally, "[i]n interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction." Section 603.1 of the Act, *added by* the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1.

On appeal, Landowner argues that: 1) The ZHB erred by finding that Sections 1402(A)(19)(d), (e) and (h) of the Ordinance do not unreasonably restrict forestry in violation of Section 603(f) of the MPC and 2) the ZHB erred by denying the requested variances to permit clear cutting on the subject properties.

Initially, we note that on April 25, 2001, which is the day before the ZHB issued its decision, the Williams Township Board of Supervisors repealed Section 1402(A)(19) of the Ordinance, which is the Section at issue here. In their briefs, neither party informed the Court of this fact or explained how this fact may affect the outcome of this case. Further, although this new Section is in the certified record with a note affixed to it stating that it was "Handed to Judge at Argument", the trial court does not address in its opinion the fact that Section 1402(A)(19) was repealed. However, the new provision, Section 1521, is substantially similar to Section 1402(A)(19). The sections set forth below that are underlined are identical or nearly identical to the sections in Section 1402(A)(19) that Landowner had challenged:

*Section 1521–Forestry Activities*

A. Forestry activities, including, but not limited to timber harvesting, shall be a permitted by right use in all zoning districts of Williams Township. Forestry activities shall be conducted in accordance with the following requirements, conditions, and/or approvals:

1. A Zoning permit shall be obtained from the Williams Township Zoning Officer prior to harvesting or otherwise removing 40 or more trees with a trunk diameter of three inches or more at a height of three feet above the average ground level on any tract of land larger than two acres;

2. A Forestry Management Plan shall be prepared and filed when harvesting 40 or more trees involving more than two acres. This plan shall be prepared by a qualified forester or forest technician;

3. The Forestry Management Plan shall be consistent with the Timber Harvesting Guidelines of the Pennsylvania Forestry Association;

4. Prior to the issuance of a Zoning Permit, an Erosion and Sedimentation Control Plan shall be submitted by the Applicant to the County Conservation District for review, recommendation, and approval;

5. *Clear cutting shall be prohibited except on tracts of less than two acres.*

6. *When harvesting or otherwise removing 40 or more trees on tracts larger than two acres, at least 30% of the forest cover (canopy) shall be kept and the residual tree[s] shall be well distributed. At least 30% of these residual trees shall be composed of highest value species as*

*determined by a forester and pursuant to the Forestry Management Plan;*

*7. Clear cutting is prohibited on areas with slopes greater than 15% or within the 100 year floodway[.]*

The only notable difference between Section 1402(A)(19) and the new Section 1521 is that clear cutting is now prohibited on slopes greater than 15% rather than 25%. In addition, the Board of Supervisors amended Section 202, Terms Defined, to delete the definition of "Commercial Forestry" and add the definition "Forestry Activities", which is defined as:

The management of forests and timberlands when practiced in accordance with accepted silvicultural principles, through developing, cultivating, harvesting, transporting, and selling trees for commercial or non-commercial purposes, which does not involve any land development. Landscaping activities connected with the development of residential, business, industrial, and commercial structures shall not be considered forestry activities.

 First, it is important to note that a zoning ordinance is presumed to be valid and the party challenging the validity of the ordinance has the heavy burden of proving that the ordinance is invalid. *Jones v. Zoning Hearing Board of the Town of McCandless,* 134 Pa.Cmwlth. 435, 578 A.2d 1369, 1370 (1990). A regulation will be held to be invalid if it: 1) does not substantially advance legitimate state interests, such as the public health, safety and general welfare of the community or 2) denies an owner economically viable use of his land.[3] *See Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1016, 112 S.Ct. 2886, 2894, 120 L.Ed.2d 798 (1992). Furthermore, in *Surrick v. Zoning Hearing Board of Upper Providence Township,*

476 Pa. 182, 382 A.2d 105 (1978), our Supreme Court stated that: "In reviewing zoning ordinances, this Court has stated that an ordinance must bear a substantial relationship to the health, safety, morals, or general welfare of the community. Thus, without expressly labeling it as such, this Court has employed a substantive due process analysis in reviewing zoning schemes and has concluded implicitly that exclusionary or unduly restrictive zoning techniques do not have the requisite substantial relationship to the public welfare." *Id.* at 188, 382 A.2d at 108. (citations omitted).

As we begin our analysis, we note that Section 107(a) of the MPC contains several definitions relevant to forestry:

### § 107. Definitions

. . .

"Forestry," the management of forests and timberlands when practiced in accordance with accepted silvicultural principles, through developing, cultivating, harvesting, transporting and selling trees for commercial purposes, *which does not involve any land development.*

. . .

"Preservation or protection," when used in connection with natural and historic resources, shall include means to conserve and safeguard these resources from wasteful or destructive use but shall not be interpreted to authorize the unreasonable restriction of **forestry,** mining or other lawful uses of natural resources.

53 P.S. § 10107(a) (emphasis added). In addition, Section 105 of the MPC provides, in relevant part, that:

### § 105. Purpose of act

---

**3.** Landowner does not allege that it is deprived of all economically viable use of its

land. Therefore, we do not need to perform this part of the takings analysis.

... wherever the provisions of this act promote, encourage, require or authorize governing bodies to protect, preserve or conserve open land, consisting of natural resources, **forests and woodlands,** any actions taken to protect, preserve or conserve such land shall not be for the purposes of precluding access for forestry.

53 P.S. § 10105 (emphasis added). Additionally, Sections 604 and 605 of the MPC provide, in relevant part, that:

### § 604. Zoning purposes

The provisions of zoning ordinances shall be designed:

(1) To promote, protect and facilitate any or all of the following: the public health, safety, morals, and the general welfare ... as well as preservation of the natural, scenic and historic values in the environment and preservation of **forests,** wetlands, aquifers and **floodplains.**

### § 605. Classifications

... Where zoning districts are created, all provisions shall be uniform for each class of uses or structures, within each district, except that additional classifications may be made within any district:

...

(2) For the regulation, restriction or prohibition of uses and structures at, along or near:

...

(iii) **places of relatively steep slope or grade, or other areas of hazardous geological or topographic features;**

...

(vii) **flood plain areas,** agricultural areas, sanitary landfills, and other places having a special character or use affecting and affected by their surroundings.

53 P.S. §§ 10604 and 10605 (emphasis added). Finally, Section 603(f) of the MPC provides that:

(f) *Zoning ordinances may not unreasonably restrict forestry activities.* To encourage maintenance and management of forested or wooded open space and promote the conduct of forestry as a sound and economically viable use of forested land throughout this Commonwealth, forestry activities, including, but not limited to, timber harvesting, *shall be a permitted use by right in all zoning districts in every municipality.*

53 P.S. § 10603(f) (emphasis added).

■ It is evident that Section 603(f) merely codifies many years of case law setting forth the general principle that zoning ordinances may not unreasonably restrict the manner in which a landowner chooses to use his land. However, an ordinance may regulate the use of land as long as the regulation is not unduly restrictive, i.e., the regulation must have the requisite substantial relationship to the public welfare in order to be valid. *Lucas, Jones, Surrick.* Thus, the question before this Court is: Does the Ordinance have the requisite substantial relationship to public welfare when it: 1) prohibits clear cutting on tracts of more than two acres, 2) requires that on tracts larger than two acres at least thirty percent of the forest canopy be preserved and 3) prohibits clear cutting on slopes greater than fifteen percent?

In *Jones,* a case decided before Section 603(f) of the MPC was enacted, a town contracted with an architectural firm to conduct a road corridor study and, based on that study and the firm's recommendations, the town amended its zoning ordinance to establish standards for the preservation of woodlands, streams and steep slopes. The ordinance employed a zoning technique known as "performance zoning" which is designed to permit a wide range of uses which gives a developer flexibility in developing land. Specifically, the ordi-

nance provided that on land with an inclination of greater than 25 percent, not more than 15 percent of the land should be developed or stripped of vegetation. The ordinance further provided that no more than 30 percent of any woodlands may be cleared and that no clearing or timbering of any woodlands may occur unless connected with an approved site plan. The landowner challenged the ordinance and the zoning hearing board determined that it was valid. The landowner appealed to the trial court, which affirmed the decision of the zoning hearing board.

On appeal to this Court, the landowner in *Jones* argued that, although the town had the authority to regulate forests and steep slopes pursuant to Sections 604 and 605 of the MPC, the ordinance was invalid because it arbitrarily and unreasonably restricted forests and steep slopes. We disagreed, and held that the ordinance was part of a comprehensive plan to permit development while at the same time preserving sensitive natural resources such as steep slopes, forests, flood plains and streams. Accordingly, we affirmed the order of the trial court.

Although *Jones* was decided before Section 603(f) was enacted, we find it instructive in this matter. Like Jones, restrictions were placed on clear cutting on steep slopes and the clearing of woodlands to help prevent erosion. These restrictions are consistent with an engineering study. In denying Landowner's zoning permit application, the ZHB, relying on the credible testimony of Mr. Madison, concluded that "[t]he elimination of all the trees on the subject properties, including the areas of steep slopes, will expose soils of the denuded hill to the undiminished force of nature and to increased erosion and permanent loss. The potential environmental damage is sizable ..." (Conclusion of Law No. 23). Based on Jones, it is evident that an ordi-

nance which is based on an engineering study and which enacts restrictions to·prevent soil erosion is not arbitrary or unreasonable and does have the requisite substantial relationship to the public welfare. Additionally, the restrictions placed on forestry by the Ordinance are consistent with Section 605 of the MPC, which allows restrictions in areas of "relatively steep slope or grade, or other areas of hazardous geological or topographical features" and in "flood plain areas." Thus, we fail to see how the trial court erred in affirming the decision of the ZHB.

██ In the alternative, Landowner argues that it is entitled to a "validity variance." Landowner asserts that it is not aware of any validity variance cases that involve a zoning ordinance provision that has the effect of restricting the ability to harvest a commercial crop, which, in this case, would be trees and vegetation. However, based on Section 603(f) and the fact that the Ordinance arbitrarily determines that a property owner must preserve at least 30 percent of the trees on its property, Landowner argues that the Ordinance as applied to it is unreasonably restrictive and confiscatory.

With regard to validity variances, this Court has stated that:

> A validity variance differs from a "normal" variance in that the normal variance is granted to adjust the zoning regulation to the particular property. *Hersh v. Zoning Hearing Board of Marlborough Township*, 90 Pa.Cmwlth. 15, 493 A.2d 807 (1985). A validity variance is granted where a zoning regulation is restrictive to the point of confiscation, and the issuance of a variance is necessary to permit a reasonable use of the land. *East Torresdale Civic Association v. Zoning Board of Adjustment*, 85 Pa.Cmwlth. 12, 481 A.2d 976 (1984), aff'd, 508 Pa. 614, 499 A.2d 1064 (1985).

In order to obtain a validity variance, the applicant must establish that: (1) the effect of the regulations complained of is unique to the applicant's property and not merely a difficulty common to other lands in the neighborhood; and (2) the regulation is confiscatory in that it deprives the owner of the use of the property. *Id.; Hersh.* The applicant can establish the confiscatory nature of the zoning regulation by proving that the land has no value or only distressed value as a result of the regulation. *Hersh.*

*Shohola Falls Trails End Property Owners Association, Inc. v. Zoning Hearing Board of Shohola Township, Pike County,* 679 A.2d 1335, 1341–1342 (Pa.Cmwlth. 1996).

The ZHB addressed whether Landowner was entitled to a "traditional" variance under the standards set forth in Section 910.2 of the MPC.[4] However, it is clear that Landowner has failed to establish that it is entitled to a validity variance, as Landowner has failed to allege that its property has no value or distressed value as a result of the Ordinance. *Hersh.* In fact, Landowner's own expert testified that forestry could be conducted on the subject properties in compliance with the Ordinance. Thus, it is clear that Landowner is not entitled to a validity variance.

Accordingly, the order of the trial court is affirmed.

Judge SIMPSON did not participate in the decision in this case.

### ORDER

AND NOW, *February 3, 2003,* the order of the Court of Common Pleas of Northampton County docketed at No. C0048CV2001004271 and dated February 25, 2002 is hereby AFFIRMED.

---

4. *Added by* the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.